**UNITED STATES DISTRICT COURT**
**DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SYDNEY TROUT, individually and on behalf of all others similarly situated<br><br>v.<br><br>THE SELECT GROUP LLC | Docket No. _____________<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**COMES NOW** Plaintiff Sydney Trout, on behalf of herself and all others similarly situated, ("Plaintiff" or "Trout"), by and through undersigned counsel, brings this wage-theft complaint against The Select Group LLC ("TSG" or "Defendant"). In support of this Complaint, Plaintiff states the following facts and claims upon knowledge as to matters relating to herself and upon information and belief as to all other matters, as follows:

**INTRODUCTION AND SUMMARY OF ACTION**

1. This is a class and collective action on behalf of individuals who were employed as Recruiters by The Select Group LLC (TSG). Defendant owns and operates a number of staffing firms in several states, including Washington, D.C.

2. Trout worked for TSG as a Recruiter during the relevant time period.

3. Trout and the other Recruiters like her regularly worked for TSG in excess of forty (40) hours each week.

4. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

5. Instead of paying overtime as required by the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, TSG improperly classified Trout and similarly situated Recruiters as exempt

employees and paid them a salary with no overtime compensation.

6. Trout brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and a class of similarly situated Recruiters who worked for TSG.

7. Trout, on behalf of herself and all other similarly situated Recruiters, likewise bring this as a collective action under § 216(b) of the FLSA and alleges that TSG has violated provisions of the FLSA.

8. Trout, on behalf of herself and all others similarly situated Recruiters, alleges that TSG has violated provisions of the Washington D.C. Minimum Wage Revision Act ("DCMWRA").

9. Trout, on behalf of herself and all other similarly situated Recruiters, alleges that TSG has violated provisions of the Washington D.C. Wage Payment and Wage Collection Law ("DCWPCL").

10. Jurisdiction and Venue

11. This Court has original subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this action involves a federal question under the FLSA.

12. This Court also has jurisdiction over Plaintiff's DCMWRA and DCWPCL claims pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in this District.

14. Specifically, Trout worked for TSG as a Recruiter in Washington, DC, which is in this District.

15. Further, TSG failed to pay Trout overtime when she worked in excess of 40 hours in a single workweek in this District.

16. TSG conducts substantial business operations in this District.

## I. THE PARTIES

17. Trout worked for TSG as a Recruiter from approximately October 2018 through January 2019 in Washington, DC and McLean, VA.

18. Throughout her employment with TSG, TSG classified Trout as an exempt employee and paid her a salary with no overtime compensation.

19. Trout's consent to be a party Plaintiff is attached as Exhibit 1.

20. Trout brings this action on behalf of herself and all other similarly situated Recruiters who TSG classified as exempt and paid a salary with no overtime compensation. TSG paid each of these workers a salary for all hours they worked and failed to pay them overtime for the hours that they worked in excess of 40 hours in a workweek in violation of the FLSA.

21. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All current and former Recruiters[1] that worked for TSG who were paid a salary with no overtime at any time in the last 3 years. ("FLSA Class Members").**

22. Trout also seeks to represent a Rule 23 class of similarly situated employees that is defined as follows:

> **All current and former Recruiters[2] that worked for TSG in the District of Columbia who were paid a salary with no overtime at any time in the last 3 years. ("DC Class Members").**

23. The FLSA Class Members and the DC Class Members will be collectively referred

---

[1] TSG refers to its Recruiters using multiple different titles, including Associate Delivery Manager and Associate Account Manager. The use of the term "Recruiters" in this class definition and throughout Trout' Collective Action Complaint encompasses the different job titles that TSG uses for its Recruiters.

[2] TSG refers to its Recruiters using multiple different titles, including Associate Delivery Manager and Associate Account Manager. The use of the term "Recruiters" in this class definition and throughout Trout' Collective Action Complaint encompasses the different job titles that TSG uses for its Recruiters.

to herein as the "Putative Class Members."

24. The Select Group LLC is a North Carolina limited liability company that may be served by serving its registered agent for service of process, **Corporation Service Company, 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608**, or wherever it may be found.

## II. COVERAGE UNDER THE FLSA

25. At all times hereinafter mentioned, TSG has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

26. At all times hereinafter mentioned, TSG has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

27. At all times hereinafter mentioned, TSG has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as computers, cell phones, and office supplies - that have been moved in or produced for commerce by any person and in that TSG have had and have an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

28. At all times hereinafter mentioned, Trout and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## III. FACTS

29. TSG is a technical services firm offering managed solutions and project-based resources to its clients across North America.

30. To provide its services to its clients, TSG employs recruiting personnel, including Trout and the Putative Class Members.

31. Many of the individuals who worked for TSG were paid a salary and misclassified as exempt employees, and these workers make up the proposed Putative Class.

32. While the exact job titles and job duties may differ, the Putative Class Members are and were subjected to the same or similar illegal pay practices for similar work.

33. Indeed, TSG utilizes multiple different job titles for its Recruiters, including Associate Delivery Manager and Associate Account Manager (like Trout), but these workers all perform the same or similar recruiting duties.

34. These so-called exempt employees were paid a salary for all the hours they worked, regardless of the number of hours that they worked in that workweek without any overtime pay for hours that they worked in excess of 40 hours in a workweek.

35. For example, Trout worked for TSG as a Recruiter (specifically an Associate Account Manager) from approximately October 2018 through January 2019 in Washington, DC and McLean, VA.

36. Throughout her employment with TSG, TSG classified her as an exempt employee and paid her a salary with no overtime compensation.

37. As Recruiters, Trout and the Putative Class Members regularly worked more than 40 hours each week without receiving overtime compensation.

38. On average, Trout estimates she worked approximately 50-60 hours each week.

39. As Recruiters, Trout (and the Putative Class Members) performed non-exempt job duties including calling potential employees for placement into companies that contracted with TSG relying on the qualifications and criteria TSG (and its clients) provides them and in accordance with TSG policies, procedures, training, and protocols; setting up interviews; and collecting documents from potential candidates.

40. The job functions of Trout and the Putative Class Members were primarily technical in nature, requiring little to no official training other than that provided by TSG to all Recruiters upon hiring.

41. Indeed, Trout and the Putative Class Members are not required to use any independent judgment, nor do they have significant discretion in performing their recruiting duties.

42. Rather, TSG requires Trout and the Putative Class Members to perform their recruiting job duties pursuant to established TSG policies, procedures, training, and protocols, from which they cannot stray.

43. Thus, to the extent Trout and the Putative Class Members make "decisions," such decisions do not require the exercise of independent discretion and judgment.

44. Instead, Trout and the Putative Class Members apply well-established TSG techniques and procedures and use established TSG standards to evaluate any issues.

45. Trout and the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

46. TSG does not require its Recruiters, including Trout and the Putative Class Members, to have an advanced degree.

47. Indeed, being a TSG Recruiter does not require specialized academic training as a standard prerequisite.

48. Trout and the Putative Class Members did not have any supervisory or management duties.

49. As Recruiters, Trout and the Putative Class Members do not set the techniques and procedures utilized to perform their job duties and do not set quality standards.

50. Trout and the Putative Class Members are not allowed to deviate from TSG's techniques and procedures utilized to perform their recruiting job duties or from any quality standards.

51. With these job duties, Trout and the Putative Class Members are clearly non-exempt employees under the FLSA.

52. Trout and the Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay and classification practices.

53. The work Trout and the Putative Class Members performed was an essential and integral part of TSG's core business.

54. TSG does not pay its Recruiters, including Trout and the Putative Class Members, overtime for hours worked in excess of 40 in a single workweek.

55. Instead, TSG pays Trout and the Putative Class Members a salary with no overtime compensation.

56. As a result of TSG's uniform pay and classification policies, Trout and the Putative Class Members were denied the overtime pay required by federal law, because these workers are, for all purposes, employees performing non-exempt job duties.

57. Because Trout and the Putative Class Members were misclassified as exempt employees by TSG, they should receive overtime for all hours that they worked in excess of 40 hours in each workweek.

58. TSG knew Trout and the Putative Class Members worked more than 40 hours in a week.

59. TSG knew, or showed reckless disregard for whether, Trout and the Putative Class Members were not exempt from the FLSA's overtime provisions.

60. Nonetheless, TSG failed to pay Trout and the Putative Class Members overtime.

61. TSG knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA

## IV. FLSA AND DCMWRA COLLECTIVE ALLEGATIONS

62. Trout incorporates all previous paragraphs and alleges that the illegal pay practices TSG imposed on Trout were likewise imposed on the Putative Class Members.

63. Pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1308(a)(1)(C)(iii)-(v), Trout seeks to prosecute her FLSA claims as a Collective Action on behalf of all persons who are or were employed as Recruiters by TSG across the United States and paid a salary with no overtime during the Collective Action Period, and to prosecute is DCMWRA claims as a Rule 23 Class Action on behalf of all persons who are or were employed as Recruiters by TSG in the District of Columbia and paid a salary with no overtime during the Class Action Period.

64. Trout and Putative Class Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) and D.C. Code § 32-1308(a)(1)(C)(iii)-(v)., because, among other things, all such individuals worked pursuant to TSG's policies and practices and, as a result of such policies and practices, were not paid the full and legally mandated overtime wage.

65. Numerous other Recruiters who worked with Trout indicated they were improperly classified as exempt employees, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

66. Based on her experience and tenure with TSG, Trout is aware that TSG's illegal practices were imposed on the Putative Class Members.

67. The Putative Class Members were all improperly classified as exempt employees and not afforded the overtime compensation when they worked in excess of 40 hours per week.

68. TSG's failure to pay wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

69. The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

70. Absent this collective action, many Putative Class Members likely will not obtain redress of their injuries, and TSG will reap the unjust benefits of violating the FLSA.

71. Furthermore, even if some of the Putative Class Members could afford individual litigation against TSG, it would be unduly burdensome to the judicial system.

72. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

73. Resolution of this action requires inquiry into common facts, including, among other things, TSG's common compensation, timekeeping, and payroll practices.

74. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

75. These similarly situated individuals are known to TSG, are readily identifiable, and can be located through TSG's payroll records which TSG was required to maintain pursuant to the FLSA, *see* 29 U.S.C. § 211(c); 29 C.F.R. § 215.2 *et seq*.

76. Conditional certification of this case as a nationwide collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and text message and allowed to opt in for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

77. Conditional certification of this case as a collective matter pursuant to D.C. Code § 32-1308(a)(1)(C)(iii)-(v) for the D.C. Collective is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail and/or other means including email and text message and allowed to opt in for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the DCMWRA.

78. There are many similarly situated current and former Recruiters who have not been paid proper wages in violation of the FLSA and DCMWRA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the nationwide Collective pursuant to 29 U.S.C. § 216(b) and the D.C. Collective pursuant to D.C. Code § 32-1308(a)(1)(C)(iii)-(v).

**WASHINGTON D.C. CLASS ALLEGATIONS**

79. Trout brings this class action pursuant to Fed. R. Civ. P. 23 and D.C. Code § 32-1308 on behalf of herself and all Recruiters employed by Defendant who worked at TSG in Washington D.C. during the relevant time period. These individuals are referred to herein as "Class Members."

80. The members of the class are so numerous that joinder of all class members is impracticable.

81. Plaintiff is a Class member and her claims are typical of the claims of other Class Members.

82. Plaintiff will fairly and adequately represent the Class Members and their interests, and they have retained competent and experience counsel who will effectively represent the Class Members' interests.

83. The critical questions of law and fact are common to all Class Members since this action concerns the legality of Defendant's policies and practices. The illegality of these policies and practices will be demonstrated by applying general legal principles to common evidence such a standardized policies and payroll/compensation practices.

84. This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

**FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA**

**Count I**

85. As set forth herein, TSG has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

86. TSG knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Trout and the Putative Class Members overtime compensation.

87. TSG's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

88. Accordingly, Trout and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

**FAILURE TO PAY OVERTIMEIN VIOLATION OF THE DCMWRA**

**Count II**

89. All previous paragraphs are incorporated as though fully set forth herein.

90. Trout and DC Class Members are employees entitled to the DCMWRA's protections.

91. TSG is an employer covered by the DCMWRA.

92. The DCMWRA, as of July 1, 2020, entitled employees to a minimum hourly compensation of $15.00 for hours worked under 40 in a week, and $22.50 for hours worked over 40 in a week. *See* D.C. Code § 32-1003(a).

93. Trout and the DC Class Members were incorrectly classified as exempt employees and were not paid overtime compensation despite regularly working 50-60 hours per week.

94. As such, TSG has violated the DCMWRA's minimum wage mandate by failing to pay Trout and the DC Class Members for hours worked over 40 in a week.

95. In violating the DCMWRA, TSG acted willfully with reckless disregard of clearly applicable DCMWRA provisions.

**FAILURE TO PAY WAGES IN VIOLATION OF THE DCWPCL**

**Count III**

96. All previous paragraphs are incorporated as though fully set forth herein.

97. Trout and the DC Class Members are employees entitled to the DCWPCL's protections.

98. TSG is an employer covered by the DCWPCL.

99. "Wages" pursuant to DCWPCL (DC Code § 32-1301(3)), "includes a: (A) Bonus; (B) Commission; (C) Fringe benefits paid in cash; (D) Overtime premium; and (E) Other renumeration promised or owed: (i) Pursuant to a contract for employment, whether written or oral; (ii) Pursuant to a contract between an employer and another person or entity; or (iii) pursuant to District or Federal law."

100. Trout and the DC Class Members performed work duties for TSG's benefit as set forth above for which TSG failed to pay Trout and the DC Class Members all wages earned and required by Federal and District of Columbia law.

101. TSG owes Trout and the DC Class Members wages for work duties performed as set forth above.

102. Trout's failure to pay Trout and the DC Class Members wages as set forth above constitutes a violation of their right to receive wages as guaranteed by the DCWPCL.

103. In violating the DCWPCL, TSG acted willfully with reckless disregard of clearly applicable DCWPCL provisions.

## V. Jury Demand

Plaintiff hereby demands a trial by jury on all issues so triable.

## VI. Relief Sought

WHEREFORE, Plaintiff Trout, on behalf of herself and all others similarly situated, prays for judgment against TSG as follows:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. Finding that this action satisfies the prerequisites for certification as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3);

c. For an Order pursuant to Section 16(b) of the FLSA finding TSG liable for unpaid back wages due Trout and the FLSA Class Members for liquidated damages equal in amount to their unpaid compensation;

d. For an Order finding TSG liable for unpaid back wages due Trout and the DC Class Members for unpaid overtime owed under the DCMWRA and DCWPCL in an amount equal to their unpaid compensation;

e. For an Order appointing Trout and her counsel as Class Counsel to represent the interests of the FLSA and DC Classes;

f. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

g. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Nicholas A. Migliaccio*

Nicholas A. Migliaccio, Esq. (D.C. Bar No.484366)
Jason S. Rathod, Esq. (D.C. Bar No. 100082)
**MIGLIACCIO & RATHOD LLP**
412 H St., NE
Suite 302
Washington, DC 20002
(202) 470-3520 (Tel.)
(202) 800-2730 (Fax)
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

**Michael A. Josephson***
Texas Bar No. 24014780
mjosephson@mybackwages.com
**Andrew W. Dunlap***
Texas Bar No. 24078444
adunlap@mybackwages.com
**Taylor A. Jones***
Texas Bar No. 24107823
tjones@mybackwages.com
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
**Pro hac vice applications forthcoming*

**Richard J. (Rex) Burch***
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
**Pro hac vice application forthcoming*

**ATTORNEYS IN CHARGE FOR TROUT & THE PUTATIVE CLASS MEMBERS**