UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SYDNEY TROUT, <u>et al.</u>, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 21-1684 (RBW) |
| THE SELECT GROUP FEDERAL, LLC, <u>et al.</u>, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

The plaintiffs, Sydney Trout and Donnie Miles, bring this putative class action against the defendants, The Select Group Federal, LLC and The Select Group US, LLC, <u>see</u> First Amended Class and Collective Action Complaint ("Am. Compl.") at 1, ECF No. 21, alleging wage-theft claims pursuant to (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, <u>see</u> <u>id.</u> ¶¶ 88–91; (2) the Washington D.C. Minimum Wage Revision Act, D.C. Code §§ 32-1003(a), 32-1301, <u>see</u> <u>id.</u> ¶¶ 92–98; and (3) the Washington D.C. Wage Payment and Wage Collection Law, D.C. Code § 32-1301, <u>see</u> <u>id.</u> ¶¶ 99–106. Currently pending before the Court is the parties' joint motion "for an order approving the settlement [that] the [p]arties reached in this action pursuant to 29 U.S.C. § 216(b)." Joint Motion for Approval of Collective Action Settlement ("Joint Mot." or the "Joint Motion") at 1, ECF No. 34. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it will grant in part and deny without prejudice in part the parties' motion.

---

[1] In addition to the filings already identified, the Court also considered the following submissions in rendering its decision: (1) Defendant The Select Group Federal, LLC's Answer to the First Amended Class and Collective Action Complaint ("Answer"), ECF No. 22; (2) the Defendants' Combined Motions to Dismiss Plaintiff's First Amended

(continued . . .)

## I. BACKGROUND

### A. Factual Background

The following allegations are derived from the plaintiffs' Amended Complaint, unless otherwise specified.

"This is a class and collective action on behalf of individuals[,]" Am. Compl. ¶ 1, like plaintiff Trout, "who were employed as [r]ecruiters by" the defendants, id., "a technical services firm offering managed solutions and project-based resources to [ ] clients across North America[,]" id. ¶ 30. "To provide [ ] services to its clients, [the defendants] employ[] recruiting personnel, including [plaintiff] Trout and the [p]utative [c]lass [m]embers." Id. ¶ 31. The defendants "utilize[] multiple different job titles for [their r]ecruiters, including Associate Delivery Manager and Associate Account Manager (like [plaintiff] Trout), but these workers all perform the same or similar recruiting duties." Id. ¶ 34.

Plaintiff Trout "worked for [the defendants] as a [r]ecruiter from approximately October 2018 through January 2019 in Washington, D[.]C[.] and McLean, V[irginia]." Id. ¶ 16. "Throughout her employment with [the defendants], [they] classified [her] as an exempt employee and paid her a salary with no overtime compensation[,]" id. ¶ 17, even though she "and the other [r]ecruiters . . . regularly worked for [the defendants] in excess of forty (40) hours each week[,]" id. ¶ 3; see also id. ¶ 39 ("On average, [plaintiff] Trout estimates [that] she worked approximately 50–60 hours each week."). "As [r]ecruiters, [plaintiff] Trout (and the [p]utative

---

(. . . continued)
Complaint Against The Select Group US, LLC for Lack of Personal Jurisdiction and Count III of Plaintiff's First Amended Complaint for Failure to State a Claim ("Defs.' Combined Mot."), ECF No. 23; (3) the Defendants' Motion to Dismiss Opt-in Donnie Miles for Lack of Personal Jurisdiction ("Defs.' Miles Mot."), ECF No. 24; (4) the parties' Memorandum of Law in Support of Joint Motion to Approve Settlement ("Joint Mem."), ECF No. 35; (5) the Confidential Settlement Agreement and Release ("Proposed Settlement"), ECF No. 35-1; (6) the Declaration of Michael A. Josephson ("Josephson Decl."), ECF No. 35-2; and (7) the Important Notice of Collective Action Settlement with The Select Group Federal, LLC and The Select Group US, LLC ("Notice"), ECF No. 35-3.

[c]lass [m]embers) performed non-exempt job duties[,] including calling potential employees for placement into companies that contracted with [the defendants,] . . . setting up interviews[,] and collecting documents from potential candidates." Id. ¶ 40. In completing these tasks, recruiters "rel[ied] on the qualifications and criteria [that the defendants] (and [their] clients) provide[d]" and followed the defendants' "policies, procedures, training, and protocols[.]" Id. Accordingly, "[plaintiff] Trout and the [p]utative [c]lass [m]embers [we]re not required to use any independent judgment, nor d[id] they have significant discretion in performing their recruiting duties." Id. ¶ 42.

B.  **Procedural Background**

Plaintiff Trout filed her original Complaint in this case on June 23, 2021, bringing claims against The Select Group LLC. See Original Class and Collective Action Complaint ("Compl.") at 1, ECF No. 1. On June 24, 2021, plaintiff Trout filed a notice that Donnie Miles had joined her as a party plaintiff. See Notice of Filing of Consents to Become Party Plaintiffs Pursuant to 29 U.S.C. § 216(b) at 1, ECF No. 4. The plaintiffs amended the Complaint on September 2, 2021, adding claims against The Select Group Federal, LLC and The Select Group US, LLC. See Am. Compl. at 1. Subsequently, on September 3, 2021, the plaintiffs filed a stipulation of dismissal as to their claims against defendant The Select Group LLC. See Rule 41 Stipulation of Dismissal Without Prejudice at 1, ECF No. 20.

On September 16, 2021, defendant The Select Group Federal, LLC filed its Answer, see Answer at 1; both remaining defendants filed a combined motion to dismiss all claims against defendant The Select Group US, LLC for lack of personal jurisdiction and Count III for failure to state a claim, see Defs.' Combined Mot. at 1; and both remaining defendants moved to dismiss plaintiff Miles' claims for lack of personal jurisdiction, see Defs.' Miles Mot. at 1.

On October 21, 2021, the parties filed a joint motion to stay these proceedings "pending [their] attempt to resolve this lawsuit through mediation[,]" Joint Motion to Stay Proceedings or, in the Alternative, to Extend Plaintiffs' Time to Respond to Defendants' Motions to Dismiss (ECF 23, ECF 24) at 1, ECF No. 31, which the Court granted, see Minute ("Min.") Order (Oct. 25, 2021).  The parties represent that "[m]ediation was held virtually before Anne Marie Estevez of Morgan, Lewis & Bockius LLP on December 28, 2021." Joint Mem. at 4; see also Josephson Decl. ¶ 18.  As part of the mediation process, "[t]he [p]arties [ ] engaged in informal discovery and submitted confidential mediation statements to [ ] Estevez." Joint Mem. at 4.  On January 12, 2023, the parties filed their joint settlement motion.  See Joint Mot. at 1.

**C.     The Proposed Settlement Agreement**

The proposed settlement agreement establishes a "Gross Settlement Amount" of $350,000.00, see Proposed Settlement ¶ 1(h), from which shall be deducted: (1) "attorney's fees to [plaintiffs' c]ounsel, not to exceed $140,000.00[;]" (2) "out-of-pocket costs incurred by [plaintiffs' c]ounsel, . . . not [to] exceed $5,000.00[;]" (3) "a service award to [plaintiff] Trout[,] . . . not to exceed $4,000.00;" and (4) "[s]ettlement administration costs[,] not to exceed $11,000.00[,]" id. ¶ 1(i).  The proposed settlement agreement applies only to "Eligible Class Member[s,]" i.e., "all Settlement Class Members who opt-in to the Settlement Class by accepting, endorsing, and negotiating (i.e., cashing or depositing) their respective Settlement Award Checks within ninety [ ] days from the date the Settlement Award Checks [a]re mailed[.]" Id. ¶ 1(e).  These

> Eligible Class Members shall be deemed to have fully, finally, and forever released, settled, compromised, and discharged the Released Parties[2] from any

---

[2] The proposed settlement defines the "Released Parties" as the defendants and their "owners, officers, directors, agents, employees, parent corporations, subsidiaries, affiliates, individual owners, and the predecessors, successors, transferees, and assigns of each of the persons and entities described in this sentence." Proposed Settlement ¶ 1(o).

4

and all federal or state wage and hour statutory or common law claims, including but not limited to any civil penalties associated with these claims, which are asserted in this [l]itigation or could have been asserted based on [the p]laintiffs' claims alleged in this [a]ction, for the Settlement Period.

Id. ¶ 2(b).  Similarly, in exchange for her $4,000.00 service award, see id. ¶ 7(a),

[p]laintiff Trout shall be deemed to have fully, finally, and forever released, settled, and discharged the Released Parties from any and all federal or state wage and hour statutory or common law claims, including but not limited to any civil penalties associated with these claims, which are asserted in this [l]itigation or could have been asserted based on [the p]laintiffs' claims alleged in this [a]ction, for the Settlement Period[,]

id. ¶ 2(a).

## II.     STANDARD OF REVIEW

"The [District of Columbia] Circuit has not opined about whether judicial approval is required of FLSA settlements reached after a FLSA suit has been filed or the related issue of whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement."  Sarceno v. Choi, 78 F. Supp. 3d 446, 449 (D.D.C. 2015).  However, "given that a court's refusal to assess proposed FLSA settlements ex ante 'leaves the parties in an uncertain position[,]' courts in this district often agree to review proposed FLSA settlements when the parties jointly seek judicial approval."  Eley v. Stadium Grp., LLC, 236 F. Supp. 3d 59, 62 (D.D.C. 2017) (quoting Carrillo v. Dandan Inc., 51 F. Supp. 3d 124, 131 (D.D.C. 2014)).  But this "review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims."  Carrillo, 51 F. Supp. 3d at 134.

"When assessing the terms of a[] FLSA settlement agreement, the court must first determine whether the proposed settlement 'resolves a bona fide dispute.'"  Eley, 236 F. Supp. 3d at 62–63 (quoting Carrillo, 51 F. Supp. 3d at 131).  "A settlement is bona fide if

it reflects a reasonable compromise over issues that are actually in dispute[.]" Sarceno, 78 F. Supp. 3d at 450 (internal quotation marks omitted). "Once a bona fide dispute has been established, the court must consider 'whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" Id. (quoting Carrillo, 51 F. Supp. 3d at 132) (alteration in original). Specifically, the Court must "focus [ ] on the fairness of the process used by the parties to reach settlement and the practical ramifications of the settlement[.]" Carrillo, 51 F. Supp. 3d at 132. "The factors that a court considers include 'whether the proposed settlement (1) was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following . . . [a]rm's length bargaining[;]" and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs.'" Eley, 236 F. Supp. 3d at 63 (quoting Carrillo, 51 F. Supp. 3d at 132) (alterations in original) (internal quotation marks omitted).

In addition, "when a proposed settlement of FLSA claims includes the payment of attorneys' fees, courts regularly assess the reasonableness of the fee award." Id.; see e.g., Meyer v. Panera Bread Co., No. 17-cv-2565 (EGS/GMH), 2019 WL 11271381, at *9 (D.D.C. Mar. 6, 2019) (evaluating the reasonableness of "the proportion of [a] proposed [FLSA] settlement allocated to attorney's fees and costs"), R. & R. adopted by Meyer v. Panera, LLC, No. 17-cv-2565 (EGS/GMH), 2019 WL 11271378 (D.D.C. Mar. 29, 2019); Williams v. Stadium Grp., LLC, No. 22-cv-1221 (ACR), 2023 WL 3377389, at *2 (D.D.C. May 11, 2023) (assessing the reasonableness of "the proposed attorney fee award" in a FLSA settlement agreement). But see Dew v. Mindfinders, Inc., No. 20-cv-2930 (BAH), 2021 WL 4797551, at *5 (D.D.C. Oct. 14,

2021) (declining to opine on the parties' request for "express judicial approval of . . . the attorneys' fees and costs" agreed upon in a proposed FLSA settlement agreement).

### III.  ANALYSIS

As other courts in this District have done in similar circumstances, the Court will consider in turn: (1) whether the parties' proposed settlement agreement "resolves a bona fide dispute[,]" Carrillo, 51 F. Supp. 3d at 131; (2) "whether the agreement reflects a reasonable compromise of disputed issues[,]" Sarceno, 78 F. Supp. 3d at 450; (3) "the reasonableness of the [attorney] fee award[,]" Eley, 236 F. Supp. 3d at 63; and (4) "whether the proposed service payments are reasonable," Meyer, 2019 WL 11271381, at *10.  The Court will then consider the parties' other requests.

**A.     Whether the Parties' Proposed Settlement Agreement Resolves a Bona Fide Dispute**

First, the Court considers whether the parties' proposed settlement agreement "resolves a bona fide dispute." Carrillo, 51 F. Supp. 3d at 131.  "A settlement is bona fide if it reflects a reasonable compromise over issues that are actually in dispute[.]" Sarceno, 78 F. Supp. 3d at 450 (internal quotation marks omitted).

Here, the plaintiffs initiated these proceedings by filing a lawsuit seeking unpaid wages under both federal and District of Columbia (state) law.  See Am. Compl. ¶¶ 88–108.  As the parties correctly note, "[t]he lawsuit was vigorously contested" before the parties reached their proposed agreement, Joint Mem. at 9, as reflected by the two motions to dismiss filed by the defendants, see generally Defs.' Combined Mot.; Defs.' Miles Mot.  Specifically, the parties disputed, inter alia, "(1) whether the proposed collective of [recruiters] could be conditionally certified; (2) whether [the p]laintiffs were misclassified as exempt from overtime pay under the FLSA; (3) whether [the d]efendant[s] should be held liable for liquidated damages; and (4)

7

whether [the d]efendants' alleged violation of the FLSA was willful." Joint Mem. at 9. However, the parties were able to reach a resolution "after [the d]efendants produced declarations from [other employees], payroll data, [and] timekeeping data for all [e]ligible [c]lass [m]embers[;] the [p]arties submitted mediation statements to a mediator[;] and the [p]arties attended a day-long mediation." Id. Accordingly, because "the fundamental issue of the wages owed to [the] plaintiffs and the appropriate damages are contested," there is "a bona fide dispute for the [proposed s]ettlement [a]greement to resolve." Dew, 2021 WL 4797551, at *4.

### B. Whether the Parties' Proposed Settlement Agreement Reflects a Reasonable Compromise of Disputed Issues

Next, the Court addresses whether the parties' proposed settlement agreement "reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." Eley, 236 F. Supp. 3d at 63 (quoting Sarceno, 78 F. Supp. 3d at 450) (alteration in original). As noted above, see supra Section II,

> [t]he factors to consider [in determining whether a proposed settlement reflects a reasonable compromise] include "whether the proposed settlement (1) was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following . . . [a]rm's length bargaining[;] and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs."

Dew, 2021 WL 4797551, at *3 (quoting Carrillo, 51 F. Supp. 3d at 132) (alterations in original). The Court will consider each factor in turn.

#### 1. Whether the Proposed Settlement Agreement Was the Product of Overreaching by the Employer

First, the Court considers "whether the proposed settlement [agreement] was the product of overreaching by the [defendants]." Carrillo, 51 F. Supp. 3d at 132 (internal quotation marks omitted). The parties argue that (1) "[d]istrict [c]ourts in this Circuit have found that '[a] settlement that provides total damages closer to that asserted by the plaintiffs than the defendants

8

would not appear to be one that is a product [of] employer overreaching[,]'" Joint Mem. at 10 (quoting Carrillo, 51 F. Supp. 3d at 133–34); and (2) "[t]he Court should find the Gross Settlement Amount adequate considering the 'presumption in favor of finding a settlement fair[,]'" id. (quoting Sarceno, 78 F. Supp. 3d at 451).  For the following reasons, the Court concludes that this factor weighs in favor of approving the proposed settlement agreement.

As an initial matter, the Court notes that the parties have not provided the Court with either the plaintiffs' or the defendants' estimate of the total damages.  See generally Joint Mem. Undoubtedly, this "mak[es] independent evaluation of where the settlement amount falls between the plaintiffs' position and the defendant[s'] impossible[.]" Dew, 2021 WL 4797551, at *4.  However, the plaintiffs have provided a declaration from plaintiffs' counsel, Michael A. Josephson, which states that "[t]he Gross Settlement Amount provides [plaintiff] Trout and the Settlement Class Members with approximately 103.5% of their total possible backpay damages assuming 45 hours worked per workweek" and, once the fees and costs are deducted from the Gross Settlement Amount, "the Net Settlement Amount provides [plaintiff] Trout and the Settlement Class Members with approximately 56.2% of their total possible backpay damages[,] assuming 45 hours worked per workweek."  Josephson Decl. ¶ 24.  Josephson has significant FLSA experience, see id. ¶ 6–7 ("I started handling wage and hour disputes in 2002" and "[a]ll my professional time is devoted to challenging illegal wage and hour practices on behalf of current and former employees and contractors."), as well as a deep familiarity with the facts of this case, see id. ¶ 13 ("I have been personally involved in th[is] litigation . . . since its inception" and "I, or my associates under my direct supervision, have been responsible for drafting all of the pleadings, correspondence with [defense c]ounsel, and related documents filed and exchanged during this litigation.").  Therefore, considering plaintiffs' counsel's relevant experience and

familiarity with this case, and "mindful of the strong presumption in favor of finding a settlement fair[,]" Sarceno, 78 F. Supp. 3d at 451 (internal quotation marks omitted), the Court concludes that the proposed settlement agreement is "not an overreach" by the defendants, Dew, 2021 WL 4797551, at *4, and thus this factor weighs in favor of approving the proposed settlement agreement.  See Meyer, 2019 WL 11271381, at *7 ("Even where the parties have not provided an estimate of [a] defendant's total liability, the court should consider the experience of the parties' counsel and their familiarity with the facts in the case, 'keeping in mind the presumption of finding a settlement fair.'" (quoting Sarceno, 78 F. Supp. 3d at 451)).

### 2. Whether the Settlement Was the Product of Negotiation Following Arm's-Length Bargaining

Next, the Court considers "whether the settlement was the product of negotiation between represented parties following . . . [a]rm's[-]length bargaining[.]"  Carrillo, 51 F. Supp. 3d at 132 (alterations in original).  When "all [p]arties [a]re represented by counsel with extensive experience in the litigation and negotiation of FLSA disputes, and the settlement was negotiated only after appropriate investigation of the claims and defenses available to the [p]arties[,]" id. at 134 (first and third alterations in original) (internal quotation marks omitted), "[t]he process . . . bears all the indicia of one that leads to a just outcome[,]" id.  Here, this factor easily weighs in favor of approving the proposed settlement agreement.

The parties "reached [the proposed] settlement agreement after extensive litigation[;] arm's-length negotiations, including a full-day mediation with experienced wage[-]and[-]hour mediator Anne Marie Estevez[;] and discussions between [c]ounsel before and after mediation." Josephson Decl. ¶ 18; see Dew, 2021 WL 4797551, at *5 ("[T]he parties' negotiations culminated in mediation supervised by an experienced and respected mediator, 'which further bolsters the arm's length nature of the negotiations'" (quoting Sarceno, 78 F. Supp. 3d at 451)).

10

As noted above, see supra Section III.A, the parties had fully "investigat[ed] [ ] the claims and defenses available to the[m,]" Carrillo, 51 F. Supp. 3d at 134 (internal quotation marks omitted), filing multiple Complaints, see generally Compl.; Am. Compl., an Answer, see generally Answer, and motions to dismiss in this case, see generally Defs.' Combined Mot.; Defs.' Miles Mot.

Furthermore, "all parties were represented by counsel with significant experience litigating employment claims, including claims under the FLSA for unpaid overtime and hours worked." Eley, 236 F. Supp. 3d at 64 (internal quotation marks omitted). Specifically, the plaintiffs are represented by three law firms experienced in wage and hour cases, as well as complex civil litigation. See Joint Mem. at 11–12 (stating that "Josephson Dunlap LLP[ has] experienced trial lawyers [who] have . . . won lawsuits or secured settlements from hundreds of major corporations and organizations[,]" "Bruckner Burch PLLC[ is] an employment law firm that is rated as a 'Top Tier' (or 'Tier 1') law firm in employment law[,]" and "Migliaccio & Rathod LLP[ is] a firm with decades of experience . . . that has successfully prosecuted several prominent wage theft . . . cases in federal and state courts"). Moreover, the defendants are similarly represented by a law firm with significant experience. See id. at 12 (stating that "Epstein Becker & Green, P.C., [is] a national law firm that has achieved prominence in the leading law firm directories, reflecting the firm's preeminence across a wide range of legal practices and geographic regions"). Therefore, the Court concludes that "[t]he process by which the instant settlement was reached [ ] bears all the indicia of one that leads to a just outcome." Carrillo, 51 F. Supp. 3d at 134.

### 3. Whether There Exist Serious Impediments to the Collection of a Judgment

Third and finally, the Court considers "whether there exist serious impediments to the collection of a judgment by the plaintiffs[,]" id. at 132, including "consider[ation of] the

11

potential benefits and pitfalls of proceeding to trial[,]" Sarceno, 78 F. Supp. 3d at 452. The Court concludes that this factor also weighs in favor of approving the proposed settlement agreement.

Although "no party has addressed whether the plaintiffs would be able to collect on any judgment were they to prevail at trial[,]" Carrillo, 51 F. Supp. 3d at 134, the plaintiffs represent that, "[e]ven if [they] could have recovered more in contested litigation, the value of immediate recovery outweighs the potential for recovery, considering the cost of continued litigation, the risk of no recovery at all, and the delay that would be caused by an appeal after a judgment[,]" Joint Mem. at 12. In support of these considerations, plaintiffs' counsel (Josephson) represents that "[t]he [s]ettlement provides immediate and substantial relief without the attendant risks, including the burden of proof and delay of continued litigation[,]" and, "[i]f approved[,] the settlement will allow the Settlement Class Members to receive their pro rata share of the settlement this calendar year[,]" Josephson Decl. ¶ 26, which is undoubtedly quicker than this case could proceed to judgment given the typical time frame for discovery and the Court's heavy trial calendar. Accordingly, the Court concludes that the opportunity to "obtain a recovery without further delay and without incurring additional litigation costs and additional attorney's fees and costs[,]" Carrillo, 51 F. Supp. 3d at 134 (internal quotation marks omitted), particularly in light of "the substantial factual disputes that could, if resolved in the defendants' favor at trial, lead to no recovery at all for the plaintiffs," id., adequately "account[s for] the inherent uncertainty of litigation and represents a reasonable resolution to the dispute[,]" id.

The Court therefore concludes that all three factors weigh in favor of approving the proposed settlement agreement as fair and reasonable.

C.     **Whether the Attorney Fee Award Is Reasonable**

The Court will now address the attorney fee award in the proposed settlement agreement. As noted above, see supra Section II, "when a proposed settlement of FLSA claims includes the payment of attorneys' fees, courts regularly assess the reasonableness of the fee award[,]" Eley, 236 F. Supp. 3d at 63.  But see Dew, 2021 WL 4797551, at *5 (declining to opine on the parties' request for "express judicial approval of . . . the attorneys' fees and costs" agreed upon in a proposed FLSA settlement agreement).  Here, the proposed settlement agreement states that plaintiffs' counsel "shall receive attorneys' fees in an amount of $140,000.00, which is 40 percent of the Gross Settlement Amount[.]"  Proposed Settlement ¶ 7(b)(1).  This award

> compensate[s plaintiffs' c]ounsel for all work performed in th[is case] as of the date of this Settlement Agreement[,] as well as all of the work remaining to be performed, including . . . documenting the settlement, securing approval of the settlement, making sure that the settlement is fairly administered and implemented, and obtaining final dismissal of th[is case].

Id.  For the following reasons, the Court concludes that the amount of this award is reasonable.

In support of the award, Josephson states that he "ha[s] been personally involved in the litigation . . . since its inception[,]" Josephson Decl. ¶ 13, and "spent considerable time [prior to the filing of the original Complaint in this case] coordinating with and interviewing [plaintiff] Trout, investigating the veracity of her allegations, [and] looking into [the defendants'] business and payroll practices[,]" id. ¶ 14.  Josephson also "draft[ed] the [C]omplaint[,]" which involved "researching the current law relating to overtime violations of the [FLSA] involving alleged exemption misclassification schemes[ and] reviewing PACER filings[.]"  Id.  In addition, Josephson states that plaintiffs' counsel "calculate[d] damages, class size, and the scope of potential exposure" from "[plaintiff] Trout's and the Class Members' payroll data and other documents [that] contained information about pay and hours worked, agreements between [the

defendants], and agreements between [plaintiff] Trout and the Settlement Class Members." Id. ¶ 16. Once litigation commenced, plaintiffs' counsel expended "time and effort[] litigating this case[,]" including: (1) "conferences, communications[,] and meetings with [defense c]ounsel[] and clients;" (2) "prepar[ation] for and attend[ance at] the Initial Scheduling Conference[;]" (3) "prepar[ation of], review[ of,] or respon[se] to pleadings," other case filings, "correspondence[,] and inquiries concerning arbitration, discovery, conditional certification, mediation, and settlement;" (4) accumulation and review of "payroll records and related information . . . to identify the class members, the potential damages at issue[,] and to negotiate the scope of relief covered by the settlement;" and (5) "extensive negotiations with [defense c]ounsel regarding the scope of the settlement[.]" Id. ¶ 17.

Based on Josephson's declaration, the Court concludes that the award of $140,000.00 in attorneys' fees to plaintiffs' counsel is reasonable. As the parties correctly note, see Joint Mem. at 12, other members of this court have approved similar attorney fee awards in comparable cases. See, e.g., Eley, 236 F. Supp. 3d at 65 (approving an attorney fee award that "represent[ed] approximately 37% of the total recovery"); Sarceno, 78 F. Supp. 3d at 452 (approving an attorney fee award that "represent[ed] less than half of the total recovery"); Carrillo, 51 F. Supp. 3d at 126–27, 134 (approving an attorney fee award of slightly more than fifty percent of the total recovery). Moreover, although plaintiffs' counsel did not "submit[] billing records detailing the amount of time expended on the case[,]" Carrillo, 51 F. Supp. 3d at 134 (distinguishing Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404 (D. Md. 2014)), Josephson's declaration provides the Court with a summary of plaintiffs' counsel's work on this case, both before and during litigation, see generally Josephson Decl. ¶¶ 13–17. And, considering "the presumption in favor of allowing parties to settle their own disputes, particularly where, as here,

14

the settlement represents a bona fide settlement of disputes of material fact [with a] range of possible outcomes[,]" Carrillo, 51 F. Supp. 3d at 134, the Court concludes that Josephson's summary provides a sufficient basis on which to conclude that the attorney fee award is reasonable.

**D.     Whether the Service Award Is Reasonable**

Next, the Court considers the reasonableness of the proposed service payment to plaintiff Trout.  The proposed settlement agreement states that plaintiff "Trout shall receive $4,000.00 for her efforts in bringing and prosecuting [this case], and in consideration of the [ ] release" of her claims against the defendants.  Proposed Settlement ¶ 7(a).  "Service payments, which courts also refer to as 'incentive payments' or 'incentive awards,' are a common means of compensating plaintiffs in class or collective actions who have actively participated in the case." Meyer, 2019 WL 11271381, at *10 (citing Cobell v. Jewell, 802 F.3d 12, 25 (D.C. Cir. 2015)). In "deciding whether to grant service awards for named plaintiffs in class action[] cases involving a common fund[,]" other members of this court "have used several factors[,]" including "the actions [that] the plaintiff has taken to protect the interests of the class, the degree to which the class benefitted from those action[s], and the amount of time and effort [that] the plaintiff expended in pursuing the litigation."  Little v. Wash. Metro. Area Transit Auth., 313 F. Supp. 3d 27, 35 (D.D.C. 2018).  "Courts also consider the risk of retaliation faced by class and collective representatives."  Meyer, 2019 WL 11271381, at *10.

Here, all of these factors support the proposed service award to plaintiff Trout.  Plaintiffs' counsel (Josephson) states that plaintiff "Trout was involved in multiple client calls and interviews throughout this litigation, detailing the challenged pay and classification practices, informing counsel about the potential size of the class at issue, and educating counsel about her

15

work for [the defendants] and in the recruitment industry[] in general." Josephson Decl. ¶ 29. As an initial matter, the Court concludes that this reflects a significant amount of "time and effort" by plaintiff Trout "in pursuing th[is] litigation." Little, 313 F. Supp. 3d at 35. Moreover, she "protect[ed] the interests of the class," id., and "benefitted" the class substantially, id., by enumerating "the challenged pay and classification practices," Josephson Decl. ¶ 29, and "informing counsel about the potential size of the class at issue," id., helping to ensure that employees of the defendant who were entitled to compensation could become members of the class and that the compensation reflected the full range of allegedly illegal actions that were the basis for the litigation. In addition, as the parties observe in their memorandum, "participating in the litigation of this matter posed a risk for [plaintiff Trout,] as in the employment context workers may face consequences in future employment for participation in a lawsuit." Joint Mem. at 14. See Meyer, 2019 WL 11271381, at *11 ("While these [p]laintiffs do not allege they have been retaliated against, the undersigned recommends finding that they 'merit recognition for assuming the risk of such for the sake of the [collective class].'" (quoting Guippone v. BH S & B Holdings, LLC, No. 09-cv-1029 (CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011)). Finally, the service award is provided "in consideration of the [ ] release" of her claims against the defendants, Proposed Settlement ¶ 7(a), and is thus the only compensation that plaintiff Trout will receive for her claims. For these reasons, the Court concludes that the amount of plaintiff Trout's service award is reasonable. See Stephens v. Farmers Rest. Grp., No. 17-cv-1087 (TJK), 2019 WL 2550674, at *7 n.5 (D.D.C. June 20, 2019) (finding that a service award of $5,000, which "track[ed] the size of payments to participating plaintiffs in other class action settlements in this Circuit," was reasonable).

E.     **The Parties' Remaining Requests**

Finally, the parties also request that the Court (1) "approv[e] the Claims Administrator's fees and costs not to exceed $11,000;" (2) "approv[e] the proposed Notice of Settlement . . . and direct[] its distribution and the distribution of the Settlement Award [c]hecks;" and (3) "incorporat[e] the terms of the Settlement Agreement and dismiss[] this case with prejudice." Joint Mem. at 15.  For the following reasons, the Court will deny without prejudice all three of the parties' requests.

First, although the parties provide some information regarding the claims administrator retained by the parties and the costs associated with the administrator's services, see id. at 7 ("The parties have retained Simpluris, a wage and hour claims administrator, to serve as the Settlement Administrator.  Simpluris's fee, estimated to be approximately $6,268.30, will be paid from the Gross Settlement Amount." (internal citations omitted)), the parties do not present any representation from which the Court can assess the reasonableness of a $11,000 claims administration fee, see generally id.[3]  Similarly, the parties do not present any legal support for their second request that the Court "approv[e] the proposed Notice of Settlement . . . and direct[] its distribution and the distribution of the Settlement Award [c]hecks[,]" id. at 15.  See generally id.  As "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work," Schneider v. Kissinger, 412 F.3d 190, 200 n.1 (D.C. Cir.

---

[3] Josephson's declaration does contain a statement regarding the "additional costs associated with the settlement administration process" that plaintiffs' counsel expects to incur, Josephson Decl. ¶ 28, however, this statement does not address the expected "Claims Administrator's fees and costs" specifically, Joint Mem. at 15.  Moreover, as noted above, see supra Section III.E, the Joint Motion and supporting memorandum do not contain any representation regarding the reasonableness of "the Claims Administrator's fees and costs[,]" Joint Mem. at 15, and therefore, despite Josephson's declaration, there is no basis on which the Court may grant this request by the parties.

17

2005), the Court will deny without prejudice the parties' requests for approval of the claims administrator's fees and costs and for approval of the proposed Notice of Settlement.[4]

Finally, regarding the parties' request that the Court "incorporat[e] the terms of the Settlement Agreement[,]" Joint Mem. at 15, the Court notes that the proposed settlement agreement includes terms other than the Gross Settlement Amount, the attorneys' fee award, and plaintiff Trout's service award, see, e.g., Proposed Settlement ¶ 2 (release of claims provisions); id. ¶ 16 (confidentiality provision); id. ¶ 32 (non-publicity provision).  However, "[t]he Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." Carrillo, 51 F. Supp. 3d at 134.  Thus, the Court "declines to opine on any aspect of the [a]greement that does not pertain directly to the compensation due to [the p]laintiffs and [the p]laintiffs' counsel." Eley, 236 F. Supp. 3d at 66 n.6.  See Carrillo, 51 F. Supp. 3d at 134 (stating that "[n]o opinion is necessary as to the enforceability" of terms such as an a "mutual non-disparagement clause" and an "extremely broad release"); Sarceno, 78 F. Supp. 3d at 452 (stating that the court "need not opine as to the enforceability of" a "mutual non-disparagement

---

[4] In the event that the parties still seek approval of these requests, they may file a second motion that includes "a statement of the specific points of law and authority that support the motion[.]" LCvR 7(a).  However, the Court questions whether it should opine on the reasonableness of the claims administrator's fees and costs and on the content of the proposed Notice of Settlement.  See Eley, 236 F. Supp. 3d at 66 n.6 ("declin[ing] to opine on any aspect of [a] [proposed FLSA] [a]greement that d[id] not pertain directly to the compensation due to [the p]laintiffs and [the p]laintiffs' counsel"); compare Meyer, 2019 WL 11271381, at *9 (analyzing the reasonableness of the claims administrator fees and costs in a proposed FLSA settlement agreement and the content of a proposed notice of settlement), with Dew, 2021 WL 4797551, at *5 (declining to opine on the plaintiffs' request for, inter alia, "express judicial approval of . . . the administrator's fees and costs" in a FLSA settlement agreement because "judicial review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims" (internal quotation marks omitted)).  Thus, if the parties choose to file a second motion, they should address whether the Court may properly provide express judicial approval of the agreed-upon "Claims Administrator's fees and costs not to exceed $11,000" and "the proposed Notice of Settlement, . . . its distribution[,] and the distribution of the Settlement Award [c]hecks[.]" Joint Mem. at 15.  More specifically, any second motion filed by the parties should address whether such terms of the settlement agreement "precisely address[] the compromised monetary amounts to resolve pending wage and overtime claims." Carrillo, 51 F. Supp. 3d at 134.

clause" and "broad mutual releases of liability" (internal quotation marks omitted)). Accordingly, to the extent that the parties' motion seeks approval of terms other than those "precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims[,]" Carrillo, 51 F. Supp. 3d at 134, the Court will deny the motion without prejudice.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny without prejudice in part the parties' motion. The Court will grant the motion to the extent that it seeks approval of the "compromised monetary amounts to resolve [the plaintiffs'] pending wage and overtime claims[,]" id., and deny the motion without prejudice in all other respects.

**SO ORDERED** this 10th day of October, 2023.[6]

REGGIE B. WALTON
United States District Judge

---

[5] If the parties can provide authority for the Court to approve such terms, the Court will reconsider its denial of such terms.

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.